EDWARD C. KEHR, Respondent, v. MARY B. SICHLER AND THEODORE J. BUCHOLS et al., Appellants.

1. *Equity — Fraudulent conveyances — Sufficiency of consideration.*—A., being the owner of certain land which he occupied jointly with B., sold said land in 1861 to C. for $2,500, and received C.'s notes for the purchase money, secured by deed of trust on the property. On the 12th of February, 1866, some three or four days before a judgment of $1,200 was rendered against him, A., notwithstanding the conveyance to C., executed a lease of the land to B. for six years, at a rent of $1,200 for the term, the receipt of which was acknowledged the same day. On the 5th of July, 1866, A. purchased in the name of B. twenty acres of ground from D. and his wife and her trustee, for a nominal consideration of $2,300, and, in connection with this purchase, transferred the notes and deed of trust from C., then amounting to some $3,000, to D. or his wife, by her trustee. D. and his wife, in addition to the conveyance of the land, paid $500 cash, and the half-interest in a growing crop of tobacco on the premises, that interest being valued at $450. At the same time the lease above mentioned from A. to B. was turned over to D. and his wife, or one of them. D. subsequently enforced the payment of C.'s note by sale under the deed of

trust, and purchased the property for himself. *Held*, that the assignment of the notes and deed of trust must be regarded as the consideration paid for the twenty acres; that the lease assigned, being from one who had no title to the ·property leased, was of no value, and could not constitute a good consideration for such purchase, and therefore the consideration passed from A.; and under such circumstances the land so purchased in B.'s name will be held to be vested in B. as a secret trustee for A., and to be liable to the demands of A.'s creditors.

*Appeal from St. Louis Circuit Court.*

*Stewart & Wieting*, for appellants.

*Lackland, Martin & Lackland*, for respondent.

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding, by petition in equity, to divest the defendant, Mary B. Sichler, of title to the premises described in the petition, and to vest the same in the plaintiff. According to the averments of the petition, the premises were purchased and paid for by defendant Buchols, the title being vested in the other defendant, as Buchols' secret trustee, in order to shield them from seizure by the latter's creditors. It is further averred that Mrs. Sichler was privy to the transaction and acquainted with the motives that inspired it. These averments are traversed by the answer, and the issue is thus presented whether the consideration of the purchase moved from Buchols or Mrs. Sichler. If the property was conveyed to the latter upon a consideration moving from the former, it is not contended that Mrs. Sichler can hold it against Buchols' creditors. The decisive inquiry, then, is, from whom did the consideration of the purchase proceed?

The premises, consisting of twenty acres of land and certain improvements, situated in St. Louis county, some twelve miles from the city, were conveyed to Mrs. Sichler by Edward W. Rice and wife, Mrs. Rice's trustee joining in the deed. The deed bears date July 5, 1867, and recites a consideration of $2,300. Buchols and Mrs. Sichler, soon after the purchase, went into possession of the property, and have occupied it ever since, Buchols cultivating the ground upon shares, as he claims. It appears that the parties, Buchols and Mrs. Sichler, although

unmarried, have occupied the same house together since 1864; first a house of Buchols', on Summit avenue, in St. Louis, and afterward, and since July, 1866, the house on the premises in question, Mrs. Sichler being the ostensible housekeeper. Such was the relation which the defendants bore to each other during the period mentioned above. In 1861 Buchols conveyed his Summit avenue property to one Sherer. The consideration recited in the deed was $2,500. Sherer gave his notes for the purchase money, one for $300 and one for $2,200, and secured them by deed of trust upon the same property. The notes were payable in one and two years from date, with interest after maturity. Notwithstanding the conveyance, Buchols retained possession of the property, and on the 12th of February, 1866, some three or four days before a judgment for about $1,200 was rendered against him, executed a lease of it to Mrs. Sichler for a term of six years, upon a reservation of rent, for the term, of $1,200, the lease reciting the receipt and payment of the rent at the date of its execution. The title to the leased premises, it will be borne in mind, was not in Buchols, the lessor, but in his grantee, Sherer; and it does not appear that Sherer had authorized the leasing. As the matter stood, no title passed by the lease. However, Buchols and Mrs. Sichler continued to occupy the property without any apparent change in their relations to it till they changed their residence and took possession of the premises now in dispute. The purchase of these premises — that is, the twenty acres acquired from Mr. and Mrs. Rice — was negotiated by Buchols. He managed the whole transaction, and, in connection with it, transferred the Sherer deed of trust notes, then amounting, with interest, to some $3,000, to one of the Rices. The Rices, in addition to the conveyance of the twenty acres, paid $500 cash, and Rice transferred his half-interest in a crop of tobacco then growing upon the premises. His interest in the tobacco, according to Buchols' statement, was valued at $450. The plaintiff's theory is that the cash, tobacco and twenty acres constituted the arranged equivalent for the deed of trust notes; in other words, that the notes paid for the land, the cash and tobacco meeting the difference between the value of the land and notes. This theory is consistent with the established facts of the case.

But it appears that the lease — Buchols' lease to Mrs. Sichler — was turned over to the Rices, or to one of them; and the defendants insist that the lease, and not the notes, paid for the land; and so Rice and Buchols swear. In order to give plausibility to this view, Rice seeks to depreciate the value of the land conveyed to Mrs. Sichler. He represents the $2,300, recited as the consideration of the deed, as being an exaggerated statement of its true consideration, inserted with a view to enhance the price of lands in that locality. This has the appearance of an afterthought, and deserves but little consideration. Whether the land was actually worth less or more than $2,300, it was doubtless reckoned in the transaction at that sum. In the transaction, what was there on the other side to balance it? The defendants say the lease. But the lease was executed by a party having no show of title. Rice was engaged in the real estate business, and must be supposed to be acquainted with titles, and to understand the value of a lease granted by a party having no title. Did he advise his wife — and he was her agent in the transaction — to part with her twenty acres of valuable land, lying within twelve miles of the city of St. Louis, for such a lease? I cannot credit it. The lease cut so unimportant a figure in the arrangement that it was not even formally assigned. It was merely transferred by delivery. If Rice's statements are worthy of credit, there can be no doubt about the agricultural value of the land conveyed. He valued the growing crop of tobacco at from $250 to $300 an acre. Twenty acres of land within twelve miles of the city of St. Louis, of such capabilities, ought to be well worth the $2,300. Besides, it appeared that there were improvements on the property.

In order to reverse the decree of the court below, it must be found that Rice, a real estate dealer, advised the sale of the twenty acres of valuable lands above described, with the improvements thereon, for a lease granted by a party who had no color of title — the value of the fee of the estate covered by the lease not exceeding some $3,500, and the pretended lease having less than six years to run. Besides, Rice testifies that he knew all about the state of the title; that the lease was made after Buchols'

sale to Sherer, and after Sherer's deed of trust back to Buchols. He further testifies that shortly after the purchase of the deed of trust notes he advertised and sold the property under the deed of trust, and bought it in for $3,350, thus concentrating in himself the entire title. What became of his wife's leasehold interest, for which it is pretended she conveyed her twenty acres of valuable tobacco lands? The pretense that the lease was received and accepted by the Rices as the consideration for the conveyance of the twenty acres, is too bald and unsustained to deserve further consideration. The claim that Rice bought the deed of trust notes for $500 cash and his half-interest in the growing crop of tobacco, will not bear examination. The notion that Buchols parted with his notes, and so with his control over the Summit avenue property, for $500 and an interest in a tobacco crop valued at $450, is wholly against the probabilities of human conduct. The notes were fairly secured, and amounted to about $3,000. We are asked to believe that Buchols sold them for $950 — $500 cash, and the balance in a tobacco crop that proved to be of no great value. It is asking too much, and more than can be granted. My conclusion upon the whole case is that Buchols bought the land; that his property paid for it, and that the title was vested in his associate for fraudulent purposes — that is, to screen it from his creditors.

The judgment will be affirmed. The other judges concur.